IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JOHN D. KINDLER and SANDRA ALUISE,
Administrator and Administratrix of the Estate      Case No.
of JASON KINDLER, Deceased, on behalf of
the estate of JASON KINDLER and on behalf
of the Wrongful Death Heirs,

        Plaintiffs,

v.

RAMON C. RUSTIN, individually and in his
official capacity as Warden of the Allegheny
County Jail, DANA PHILLIPS individually
and in her official capacity as Chief Operating
Officer of Allegheny Correctional Health
Services Inc. ALLEGHENY COUNTY
HEALTH DEPARTMENT, ALLEGHENY
CORRECTIONAL HEALTH SERVICES
INC., ALLEGHENY COUNTY, DAN
ONORATO individually and in his official
capacity as County Executive of Allegheny
County, BRUCE DIXON, individually and in
his official capacity as Director of the
Allegheny County Health Department,

        Defendants.

## COMPLAINT IN CIVIL ACTION

AND NOW, come Plaintiffs JOHN D. KINDLER and SANDRA ALUISE,

Administrator and Administratrix of the Estate of JASON KINDLER, Deceased, on behalf of the

Estate of JASON KINDLER, and on behalf of the wrongful death heirs by and through their

attorneys, WILLIAM F. GOODRICH, ESQ. and STEVEN M. BARTH, ESQUIRE and

GOODRICH & GOODRICH, P.C., and file the following Complaint:

## **PARTIES**

1.      Plaintiff, JOHN D. KINDLER, is an adult individual residing at 990 Saxonburg Blvd., Glenshaw, Allegheny County, Pennsylvania, 15116.

2.      Plaintiff, SANDRA ALUISE, is an adult individual residing at 1528 N. Canal Street, Pittsburgh, Allegheny County, Pennsylvania, 15215.

3.      On or about April 21, 2008, Plaintiffs, JOHN D. KINDLER and SANDRA ALUISE, were granted letters of administration and appointed Administrator and Administratrix of the Estate of JASON KINDLER, by the Court of Common Pleas of Allegheny County at No. 020802476 of 2008.

4.      Plaintiffs JOHN D. KINDLER and SANDRA ALUISE,  as the Administrator and Administratrix of the Estate of JASON KINDLER, deceased, bring this action on behalf of all persons entitled to recover damages for the wrongful death of JASON KINDLER, pursuant to 42 Pa. C.S.A. § 8301.  Plaintiffs also bring this action to recover damages on behalf of the Estate of JASON KINDLER pursuant to 42 Pa. C.S.A. § 8302.

5.      The names and addresses of all persons entitled by law to recover damages for the death of JASON KINDLER and their relationship to the Decedent Plaintiff  are listed as follows:

2

- a.) John D. Kindler - Father
  90 Saxonburg Blvd.
  Glenshaw PA 15116

- b.) Sandra Aluise – Mother
  1528 N. Canal Street
  Pittsburgh PA 15215

- c.) Cavin Kindler - Son
  709 Stanley Street
  Springdale, PA 15144

- d.) Braden Kindler – Son
  709 Stanley Street
  Springdale, PA 15144

6.  During his lifetime, JASON KINDLER, did not commence any action to recover damages for the injuries which caused his death and no other action has been filed to recover damages for the injuries and wrongful death of JASON KINDLER.

7.  At all times relevant hereto, Defendant, RAMON C. RUSTIN (hereinafter "RUSTIN"), was the Warden of the Allegheny County Jail charged with the control and supervision of all guards employed within the jail. As such, he was responsible for the training, supervision, direction, procedures and conduct of all guards and was responsible for the health, safety, and adequate medical treatment of inmates within the Allegheny County Jail.

8.  At all times relevant hereto, Defendant, RUSTIN, was responsible for creating and executing policies to ensure the safety, health, and availability and provision of adequate medical treatment to all inmates within the Allegheny County Jail. Accordingly, Defendant RUSTIN was responsible for formulating and implementing jail guard procedures to protect the safety, health, availability and provision of adequate medical treatment to inmates.

3

9. At all times relevant hereto, Defendant, RUSTIN represented the legal authority and official policy of ALLEGHENY COUNTY pertaining to guard actions, duties, responsibilities, training, procedures, supervision, regarding the safety, health, availability and provision of adequate medical treatment of inmates. As such, Defendant RUSTIN acted under color of state law in those regards.

10. At all times relevant hereto, Defendant BRUCE DIXON, was the Director of the ALLEGHENY COUNTY HEALTH DEPARTMENT. He is sued as a private person and in his official capacity.

11. At all times relevant hereto, Defendant BRUCE DIXON, was the President of ALLEGHENY COUNTY CORRECTIONAL HEALTH SERVICES, INC..

12. At all times relevant hereto, Defendants BRUCE DIXON and ALLEGHENY COUNTY HEALTH DEPARTMENT were charged with and responsible for the oversight, control, direction, and monitoring of the operations of Defendant ALLEGHENY CORRECTIONAL HEALTH SERVICES, INC.

13. Defendant, ALLEGHENY COUNTY CORRECTIONAL HEALTH SERVICES, INC., is a Pennsylvania Non-Stock, Non-Profit corporation created by Defendants ALLEGHENY COUNTY and the ALLEGHENY COUNTY HEALTH DEPARTMENT for the purpose of ensuring the availability and provision of medical care at the Allegheny County Jail. Accordingly, Defendant, ALLEGHENY COUNTY CORRECTIONAL HEALTH SERVICES

4

INC., acts as an agent, servant, employee and/or subordinate of local state agency Defendant, ALLEGHENY COUNTY.

14.     At all times relevant hereto, Defendant DANA PHILLIPS, was the Chief Operating Officer of ALLEGHENY COUNTY CORRECTIONAL HEALTH SERVICES, INC. She is sued as a private person and in her official capacity.

15.     At all times relevant hereto, Defendants, BRUCE DIXON, ALLEGHENY COUNTY HEALTH DEPARTMENT, DANA PHILLIPS and ALLEGHENY CORRECTIONAL HEALTH SERVICES, INC., were immediately and directly responsible for the availability and provision of medical services at the Allegheny County Jail and the maintenance of an infirmary within the jail. Accordingly, Defendants, BRUCE DIXON, ALLEGHENY COUNTY HEALTH DEPARTMENT, DANA PHILLIPS and ALLEGHENY CORRECTIONAL HEALTH SERVICES, INC. were immediately and directly responsible for the health and safety of inmates and the availability and provision of adequate medical treatment to inmates.

16.     At all times relevant hereto, Defendants BRUCE DIXON, ALLEGHENY COUNTY HEALTH DEPARTMENT, DANA PHILLIPS, and ALLEGHENY CORRECTIONAL SERVICES, INC., represented the legal authority and official policy of ALLEGHENY COUNTY in regards to the maintenance of the health and safety of inmates in regards to the provision and availability of adequate medical care. As such, Defendants BRUCE DIXON, ALLEGHENY COUNTY HEALTH DEPARTMENT, DANA PHILLIPS, and

5

ALLEGHENY CORRECTIONAL SERVICES, INC. represented the legal authority of and acted under color of state law relative to the availability and provision of medical care.

17. At all times relevant hereto, Defendants, RAMON C. RUSTIN, BRUCE DIXON, ALLEGHENY COUNTY HEALTH DEPARTMENT, DANA PHILLIPS and ALLEGHENY CORRECTIONAL HEALTH SERVICES, INC., and their agents, servants, and/or employees were responsible for creating and implementing procedures, policies, guidelines, and practices for timely jail guard and/or jail personnel referrals of inmates suffering from adverse medical conditions to the jail infirmary to protect the health and safety of inmates. In providing for this determination by jail guard and/or jail personnel, Defendants, RAMON C. RUSTIN, BRUCE DIXON, ALLEGHENY COUNTY HEALTH DEPARTMENT, DANA PHILLIPS and ALLEGHENY CORRECTIONAL HEALTH SERVICES, INC. represented the legal authority and official policy of ALLEGHENY COUNTY, and acted under color of state law.

18. At all times relevant hereto, Defendants, RAMON C. RUSTIN, BRUCE DIXON, ALLEGHENY COUNTY HEALTH DEPARTMENT, DANA PHILLIPS and ALLEGHENY CORRECTIONAL HEALTH SERVICES, INC., and their agents, servants and/or employees were responsible for creating and implementing procedures, policies, guidelines, and practices for timely referrals of inmates by infirmary personnel to outside medical providers which the medical facilities and personnel at the Allegheny County jail infirmary are inadequate to address an inmate's medical condition. In providing for this determination to be made by infirmary personnel, Defendants, RAMON C. RUSTIN, BRUCE DIXON, ALLEGHENY COUNTY HEALTH DEPARTMENT, DANA PHILLIPS and

6

ALLEGHENY CORRECTIONAL HEALTH SERVICES, INC. represented the legal authority and official policy of ALLEGHENY COUNTY and acted under color of state law.

19. At all times relevant hereto, The Defendant, ALLEGHENY COUNTY, was a local state agency organized and existing under the laws of the Commonwealth of Pennsylvania, authorized to and maintaining the Allegheny County Jail for the purposes of safely detaining, incarcerating and rehabilitating citizens and inhabitants of Allegheny County.

20. At all time relevant hereto, Defendants, RAMON C. RUSTIN, BRUCE DIXON, ALLEGHENY COUNTY HEALTH DEPARTMENT, DANA PHILLIPS and ALLEGHENY CORRECTIONAL HEALTH SERVICES, INC., were agents, servants, and/or employees of ALLEGHENY COUNTY.

21. At all times relevant hereto, Defendant ALLEGHENY COUNTY acted through its agents, servants, and employees.

22. By virtue of its conduct, through its agents, servants, and employees, in detaining, incarcerating, protecting and rehabilitating inmates at the Allegheny County Jail, Defendant, ALLEGHENY COUNTY, expressly assumed the duties of maintaining the health and safety of inmates in regards to the provision and availability of adequate medical care and maintenance of clean, healthful, and safe conditions at the Allegheny County Jail.

23. By virtue of its conduct, in the creation and incorporation of Defendant, ALLEGHENY CORRECTIONAL HEALTH SERVICES, INC., Defendant, ALLEGHENY

7

COUNTY, expressly assumed the duties of maintaining the health and safety of inmates in regards to the provision and availability of adequate medical care and maintenance of clean, healthful, and safe conditions at the Allegheny County Jail.

24.     Defendant, DAN ONORATO, is the duly elected County Executive of Allegheny County. He is sued as a private person and in his official capacity.

25.     As County Executive of Allegheny County, Defendant, DAN ONORATO, is responsible for supervision, oversight, direction and control of the agencies, departments, operations, and functions of the Defendant ALLEGHENY COUNTY.

26.     The maintenance of clean, healthy, and safe conditions and the provision of adequate medical care to inmates within the Allegheny County Jail are operations and functions of the Defendant, ALLEGHENY COUNTY.

27.     At all times relevant hereto, Defendant, DAN ONORATO represented the legal authority and official policy of ALLEGHENY COUNTY regarding his supervision, oversight, direction and control of the maintenance of healthy and safe conditions and the provision of adequate medical care to inmates within the Allegheny County Jail. Accordingly Defendant DAN ONORATO, acted under color of state law in those regards.

## FACTS

28.     Each of the above paragraphs is incorporated herein by reference.

8

29.     At all times relevant hereto, all Defendants were required to adhere to and

enforce the following policy and procedures:

a.)     All Defendants must consider suicide prevention as one of the highest
priorities of service within the correctional setting;

b.)     All Defendants must work together to identify inmates at risk for suicide;

c.)     All Defendants will have an outlined program for responding to suicidal
individuals;

d.)     All Defendants must learn about an inmates' high risk periods
immediately upon admission to a facility;

e.)     All Defendants must learn about an inmates' high risk periods after
adjudication, when the inmate is returned to a facility from court;

f.)     All Defendants must learn about an inmates' high risk periods following
the receipt of bad news regarding self or family;

g.)     All Defendants must learn about an inmates' high risk periods after
suffering from some type or form of humiliation, rejection or abuse;

h.)     All Defendants will review information of newly arriving inmates in this
institution concerning issues related to suicide;

i.)     All Defendants conducting the intake personal screen will be continuously
alert to suicidal behavior;

j.)     All Defendants will train their staff who work with inmates to recognize
verbal and behavioral cues that indicate the potential for suicide;

k.)     All Defendants who recognize an inmate as being potentially suicidal are
to request immediate evaluation of the patient through the nursing or
mental health staff;

9

l.)      All Defendants' staff who recognize an inmate as being potentially suicidal are to request immediate evaluation of the inmate through the nursing mental health staff on Pods 5C, 5MD and 5D (once opened);

m.)     All assessments of potentially suicidal inmates is to be conducted by qualified mental health professionals, trained to determine an inmate's level of suicide risk;

n.)      Inmates who have been determined to be suicidal should be placed/housed according to institutional policy and procedures for the monitoring of such individuals within the correctional setting. Regular documented supervision should be maintained;

o.)      Inmates who have been determined to be suicidal should be placed/bound in the appropriate acute mental health housing within either 5C Acute Male or 5MD Acute Intermediate Female (and 5D Acute Male when opened). Regular, documented supervision should be maintained.

p.)      Suicidal inmates should not be housed alone, or left alone, unless constant supervision can be maintained. If constant supervision cannot be provided when needed, the inmate should be housed with another resident or in a dormitory and checked every 10 to 15 minutes by correctional staff. However, the rooms should be as nearly suicide proof as possible. Ideally, constant supervision by a staff member is preferable;

q.)      The procedures for referring potentially suicidal inmates and attempted suicides to mental health care providers or facilities should be clearly outlined;

r.)      Clear, current and accurate information regarding an inmate must be communicated between health care personnel and correctional personnel pursuant to the procedures of communication;

s.)      The intervention plan on how to handle a suicide that is in progress, including appropriate first aid measures, should be clearly outlined;

t.)      Procedures for notifying correctional administrators, outside authorities and family members of potential, attempted or completed suicides will be in place;

u.) Procedures for documenting the identification and monitoring of potential or attempted suicides will be detailed, as well as procedures for reporting a completed suicide;

v.) The suicide plan should specify the procedure for medical/administrative review if a suicide does occur.

w.) A formal psychiatric/suicide review should take place following all successful suicides, or significant suicide attempts.

28. On January 26, 2008, Decedent Plaintiff was being held at the Allegheny County Jail for a warrant dated January 21, 2008 which pertained to the Plaintiff failing to pay a fine on a criminal violation.

29. During the intake process, Decedent Plaintiff informed the Defendants that he had prior psychiatric treatment, present suicidal thoughts, suffered from depression, bipolar disorder, drug use within days of incarceration and previously been hospitalized multiple times for psychiatric treatment.

30. At all times relevant hereto, Decedent Plaintiff informed all Defendants that he needed mental health treatment during his incarceration.

31. At all times relevant hereto, Decedent Plaintiff signed a consent form to be treated for mental health issues while incarcerated by Defendants.

32. At all times relevant hereto, Defendants knew that Decedent Plaintiff required medication for his mental illness.

11

33.     At all times relevant hereto, all Defendants recognized and knew that Decedent
Plaintiff JASON KINDLER previously attempted suicide twice and that he required ongoing
mental health and psychiatric treatment.


34.     At all times relevant hereto, all Defendants recognized Decedent Plaintiff as being
potentially suicidal and recommended evaluation of Decedent Plaintiff through the nursing
mental health staff.


35.     Initially, all Defendants recognized and considered the Decedent Plaintiff as
potentially suicidal but assigned Decedent Plaintiff to a general population pod without the
necessary safeguards for a suicide threat.


36.     In housing suicidal inmates such as Decedent Plaintiff, all Defendants knew that
they should not be housed alone or left alone unless constant supervision can be maintained,
preferably by a staff member at minimum every 15 minutes for a visual check.


37.     Decedent Plaintiff was initially assigned a cellmate in the general population.


38.     At all times relevant hereto, all Defendants allowed the Decedent Plaintiff to have
shoe laces in his shoes even though they recognized and knew of Decedent Plaintiff's past
mental medical history and suicide attempts.


12

39.    At sometime before and/or on January 26, 2008, Decedent Plaintiff's cellmate was removed from this pod by the Defendants and the Plaintiff was left alone in his cell for an undetermined amount of time.

40.    On or about January 26, 2008, Decedent Plaintiff hung himself in his cell with the shoelaces all Defendants had failed to remove from a potentially suicidal inmate during the intake process where it was the responsibility of all Defendants to recognize an inmate as potentially suicidal and take the necessary safeguards.

41.    At all times relevant hereto, all Defendants did knowingly disregard the objective and/or excessive risk the Decedent Plaintiff posed to his own safety and health while incarcerated at the Defendants' facility, the Allegheny County jail.

42.    At all times relevant hereto, during the course of Decedent Plaintiff's detention, the Defendants failed to recognize that the Plaintiff presented an objective and/or excessive risk of suicide.

43.    At all times relevant hereto, Defendants failed to be continuously alerted to Decedent-Plaintiff's suicidal behavior.

44.    At all times relevant hereto, during the course of Decedent Plaintiff's detention, the Defendants failed to respond properly or adequately to the objective and/or excessive risk of suicide posed by the Decedent Plaintiff.

13

45. As a direct and proximate result of the Defendants' conduct, Decedent Plaintiff suffered the following injuries:

        a.     Asphyxiation;

        b.     Strangulation;

        c.     Abrasions and contusions of the neck; and

        d.     Death.

46. As a result of the death of their son Plaintiffs, JOHN D. KINDLER and SANDRA ALUISE, claim all appropriate damages under the Survivor Act, including but not limited to the following:

        a.)     Pain, suffering, and inconvenience;

        b.)     Anxiety, embarrassment and humiliation;

        c.)     Medical expenses;

        d.)     Funeral expenses; and

        e.)     Loss of earning capacity.

47. As a result of the death of Decedent Plaintiff, JASON KINDLER, Plaintiffs JOHN D. KINDLER and SANDRA ALUISE claim all appropriate damages under the Wrongful Death Act, including but not limited to the following:

        a.)     Estate administration expenses;

        b.)     Medical expenses;

        c.)     Loss of society, companionship and services; and

        d.)     Economic loss occasioned by the death of the Decedent Plaintiff .

14

## **COUNT I – PLAINTIFFS v. ALL DEFENDANTS PURSUANT TO 42 U.S.C. §1983**

48.     The Plaintiffs incorporate by reference Paragraph Nos. 1 through 47 of the within Complaint the same as though set forth herein and at length.

49.     At all relevant times, Defendants were acting under color of the statutes, ordinances, regulations, customs and usages of Defendant ALLEGHENY COUNTY and under the authority of their offices as law enforcement officers.

50.     Defendants deprived Decedent Plaintiff of the rights, privileges, and immunities secured to him by 42 U.S.C. §1983 and by the Fourth, Eight, and Fourteenth Amendments to the United States Constitution, as well as the rights, privileges and immunities provided by Decedent Plaintiff by the Pennsylvania state constitution.

51.     Decedent Plaintiff 's injuries and damages were the direct and proximate result of the Defendants' conduct as follows:

  a.)     In failing to recognize that the Decedent Plaintiff presented an objective and/or excessive risk of suicide;

  b.)     In failing to respond properly or adequately to the objective and/or excessive risk of suicide posed by the Decedent Plaintiff ;

  c.)     In failing to properly monitor the Decedent Plaintiff ;

  d.)     In failing to request medical intervention by experienced medical personnel on the Decedent Plaintiff 's behalf;

  e.)     In failing to properly observe the condition of the Decedent Plaintiff while in custody;

15

f.) In deliberately and willfully placing Decedent Plaintiff under arrest without taking appropriate precautions to ensure his safety while in custody;

g.) In failing to provide a safe environment that would have prevented Decedent Plaintiff's death by suicide;

h.) In failing to acquire medical assistance for Decedent Plaintiff in a timely manner;

i.) In failing to monitor the Decedent Plaintiff appropriately under the circumstances;

j.) In failing to review information concerning issues related to suicide;

k.) In failing to conduct the health receiving screen in a manner which would continuously alert them to suicidal behavior;

l.) In failing to provide training in suicide training in the training programs for both Allegheny County Jail correctional and health care staff;

m.) In failing to train their staff members who work with inmates to recognize verbal and behavioral cues which indicate the potential for suicide;

n.) In failing to recognize that the Decedent Plaintiff as being potentially suicidal;

o.) In failing to request an immediate evaluation of the patient through the nursing mental health staff on Pods 5C, 5MD, and 5 D;

p.) In allowing Decedent Plaintiff to be placed in the general population;

q.) In failing to conduct the assessment of potentially suicidal inmates by qualified mental health professionals, trained to determine an inmate's level of suicide risk;

r.) In failing to place the Decedent Plaintiff in the appropriate acute mental health housing unit;

s.) In failing to provide regular and documented supervision of Decedent Plaintiff;

t.) In housing the Decedent Plaintiff alone;

u.) In failing to make the room where the Decedent Plaintiff passed away as nearly suicide proof as possible;

16

v.)     In failing to check on the Decedent Plaintiff every 15 minutes;

w.)     In failing to outline the procedures for referring potentially suicidal inmates and attempted suicides to mental health care providers or facilities;

x.)     In failing to provide procedures for communication between health care personnel and Allegheny County Jail correctional personnel regarding the status of the inmate in a clear, current and accurate fashion;

y.)     In failing to outline an intervention plan on how to handle a suicide;

z.)     In failing to have procedures in place to notify the Allegheny County Jail administrators, outside authorities and family members of potential, attempted or completed suicides of inmates; and

aa.)     In failing to provide procedures of documenting the identification and monitoring of potential or attempted suicides of inmates.

52.     The Defendants' failure to recognize and respond to the objective and/or excessive risk of suicide posed by the Decedent Plaintiff while in the custody of the Defendants caused the Decedent Plaintiff's injuries and death.

53.     Defendants, in depriving Decedent Plaintiff of his constitutional rights, were intentional, negligent, recklessly indifferent, willful, wanton, malicious, and outrageous.

54.     Plaintiffs also claim reasonable attorneys' fees and costs from Defendants as provided by 42 U.S.C. §1988.

WHEREFORE, the Plaintiffs, JOHN D. KINDLER and SANDRA ALUISE, demand judgment against the Defendants for compensatory and punitive damages, together with court costs, attorneys' fees, interest, and all other relief permitted by the Court. JURY TRIAL DEMANDED.

17

## COUNT II – PLAINTIFFS v. DEFENDANT
## ALLEGHENY COUNTY PURSUANT TO 42 U.S.C. §1983

55.     The Plaintiffs incorporate by reference thereto Paragraph Nos. 1 through 54 of the

within Complaint the same as though set forth herein and at length.


56.     Decedent Plaintiff's injuries, death, and damages were a direct and proximate

result of the Defendants' conduct as follows:

        a.)    In failing to train properly individual corrections officers in safe methods of handling incarcerated persons;

        b.)    In failing to train properly individual corrections officers in the monitoring of incarcerated persons under the care and custody of the Defendant ALLEGHENY COUNTY;

        c.)    In failing to properly train individual corrections officers to provide medical intervention to persons under the care and custody of the Defendant ALLEGHENY COUNTY;

        d.)    In failing to recognize that the Decedent Plaintiff's alcohol consumption prior to his arrest may have rendered him more susceptible to injury and/or suicide;

        e.)    In failing to supervise properly individual corrections officers;

        f.)    In failing to train properly corrections officers in the recognition of objective and/or excessive suicide risk of persons under the care and custody of the Defendant ALLEGHENY COUNTY;

        g.)    In failing to train properly corrections officers in suicide prevention of persons under the care and custody of the Defendant ALLEGHENY COUNTY;

        h.)    In failing to train properly corrections officers in suicide risk assessment of persons under the care and custody of the Defendant ALLEGHENY COUNTY;

18

i.)     In failing to train properly corrections officers in responding to objective and/or excessive suicide risk in persons under the care and custody of the Defendant ALLEGHENY COUNTY;

j.)     In failing to review information concerning issues related to suicide;

k.)     In failing to conduct the health receiving screen in a manner which would continuously alert them to suicidal behavior;

l.)     In failing to provide training in suicide training in the training programs for both Allegheny County Jail correctional and health care staff;

m.)     In failing to train their staff members who work with inmates to recognize verbal and behavioral cues which indicate the potential for suicide;

n.)     In failing to recognize that the Decedent Plaintiff as being potentially suicidal;

o.)     In failing to request an immediate evaluation of the patient through the nursing mental health staff on Pods 5C, 5MD, and 5 D;

p.)     In allowing Decedent Plaintiff to be placed in the general population;

q.)     In failing to conduct the assessment of potentially suicidal inmates by qualified mental health professionals, trained to determine an inmate's level of suicide risk;

r.)     In failing to place the Decedent Plaintiff in the appropriate acute mental health housing unit;

s.)     In failing to provide regular and documented supervision of Decedent Plaintiff ;

t.)     In housing the Decedent Plaintiff alone;

u.)     In failing to make the room where the Decedent Plaintiff passed away as nearly suicide proof as possible;

v.)     In failing to check on the Decedent Plaintiff every 15 minutes;

w.)     In failing to outline the procedures for referring potentially suicidal inmates and attempted suicides to mental health care providers or facilities;

x.)     In failing to provide procedures for communication between health care personnel and Allegheny County Jail correctional personnel regarding the status of the inmate in a clear, current and accurate fashion;

19

y.)   In failing to outline an intervention plan on how to handle a suicide;

z.)   In failing to have procedures in place to notify the Allegheny County Jail administrators, outside authorities and family members of potential, attempted or completed suicides of inmates; and

aa.)  In failing to provide procedures of documenting the identification and monitoring of potential or attempted suicides of inmates.

57.   The actions of the individual corrections officers as aforesaid resulted from and were taken pursuant to a policy, practice, and/or custom of the Defendant ALLEGHENY COUNTY, which policy, practice and/or custom is implemented by individual corrections officers.

58.   Defendant ALLEGHENY COUNTY had approved and condoned the procedures implemented by and enforced by the individual correctional officers.

59.   The Defendants' failure to recognize or respond to the objective and/or excessive risk of suicide presented by the Decedent Plaintiff while in the care and custody of the Defendant ALLEGHENY COUNTY caused his injuries and death.

60.   Plaintiffs also claim reasonable attorneys' fees and costs from Defendants as provided for by 42 U.S.C. §1988.

WHEREFORE, the Plaintiffs, JOHN D. KINDLER and SANDRA ALUISE, demand judgment against the Defendants for compensatory and punitive damages, together with court

costs, attorneys' fees, interest, and all other relief permitted by the Court. JURY TRIAL
DEMANDED.

## COUNT III – PLAINTIFFS v. DEFENDANT ALLEGHENY COUNTY

61.     The Plaintiffs incorporate by reference thereto Paragraph Nos. 1 through 60 of the

within Complaint the same as though set forth herein and at length.

62.     The following individuals are eligible to recover damages as a result of the

Decedent Plaintiff's death pursuant to Pa. C.S.A. §8301:

> a.)     John D. Kindler - Father
> 90 Saxonburg Blvd.
> Glenshaw PA  15116

> b.)     Sandra Aluise – Mother
> 1528 N. Canal Street
> Pittsburgh PA  15215

> c.)     Cavin Kindler - Son
> 709 Stanley Street
> Springdale, PA 15144

> d.)     Braden Kindler – Son
> 709 Stanley Street
> Springdale, PA 15144

63.     During his lifetime, Decedent Plaintiff did not commence any action for the

injuries that caused his death and no other action has been filed to recover damages for the

wrongful death of Decedent Plaintiff .

21

64.     At all relevant times, Defendants conducted themselves in a careless, reckless,

and negligent manner, and acted with reckless indifference to the rights of the Decedent Plaintiff

generally and in the following particulars:

a.)     In failing to recognize that the Decedent Plaintiff presented an objective
        and/or excessive risk of suicide;

b.)     In failing to respond properly or adequately to the objective and/or
        excessive risk of suicide posed by the Decedent Plaintiff ;

c.)     In failing to properly monitor the Decedent Plaintiff ;

d.)     In failing to request medical intervention by experienced medical
        personnel on the Decedent Plaintiff 's behalf;

e.)     In failing to properly observe the condition of the Decedent Plaintiff
        while in custody;

f.)     In deliberately and willfully placing Decedent Plaintiff under arrest
        without taking appropriate precautions to ensure his safety while in
        custody;

g.)     In failing to provide a safe environment that would have prevented
        Decedent Plaintiff 's death by suicide;

h.)     In failing to acquire medical assistance for Decedent Plaintiff in a timely
        manner;

i.)     In failing to monitor the Decedent Plaintiff appropriately under the
        circumstances;

j.)     In failing to train properly individual corrections officers in safe methods
        of handling incarcerated persons;

k.)     In failing to train properly individual corrections officers in the monitoring
        of incarcerated persons under the care and custody of the Defendant
        ALLEGHENY COUNTY;

l.)     In failing to properly train individual corrections officers to provide
        medical intervention to persons under the care and custody of the
        Defendant ALLEGHENY COUNTY;

m.)     In failing to recognize that the Decedent Plaintiff 's alcohol consumption
        prior to his arrest may have rendered him more susceptible to injury and/or
        death;

22

n.)    In failing to supervise properly individual corrections officers;

o.)    In failing to train properly corrections officers in the recognition of excessive and/or objection suicide risk of persons under the care and custody of the Defendant ALLEGHENY COUNTY;

p.)    In failing to train properly corrections officers in suicide prevention of persons under the care and custody of the Defendant ALLEGHENY COUNTY;

q.)    In failing to train properly corrections officers in suicide risk assessment of persons under the care and custody of the Defendant ALLEGHENY COUNTY; and

r.)    In failing to train properly corrections officers in responding to objective and/or excessive suicide risk in persons under the care and custody of the Defendant ALLEGHENY COUNTY.

65.    As the direct and proximate result of the Defendants' negligence, the plaintiffs and entitled persons have suffered the following damages:

a.)    Funeral expenses of the Decedent Plaintiff ;

b.)    Expenses of administration related to the Decedent Plaintiff 's injuries;

c.)    The loss of contribution, support, consortium, comfort, counsel, aid, association, care and services of the Decedent Plaintiff ;

d.)    Medical expenses incidental to treatment of the Decedent Plaintiff for his injuries and subsequent death;

e.)    Such other damages as are permissible in the wrongful death action;

f.)    Other losses and damages recoverable under 42 Pa. C.S.A. §8301.

23

66.     As a direct and proximate result of the previously described outrageous, reckless, negligent, willful, wanton, and/or intentional conduct of the Defendants, plaintiffs seek punitive damages on behalf of the persons identified herein.

WHEREFORE, the Plaintiffs, JOHN D. KINDLER and SANDRA ALUISE, demand judgment against the Defendants for compensatory and punitive damages, together with court costs, attorneys' fees, interest, and all other relief permitted by the Court.  JURY TRIAL DEMANDED.

## COUNT IV – PLAINTIFFS v. ALL DEFENDANTS – SURVIVAL ACTION

67.     The Plaintiffs incorporate by reference thereto Paragraph Nos. 1 through 66 of the within Complaint the same as though set forth herein and at length.

68.     The Plaintiffs bring this survival action pursuant to 20 Pa.C.S.A. §3373 and 42 Pa.C.S.A. §8302.

69.     As the direct and proximate result of the Defendants' negligence, the Defendants, and each of them, are liable for the following damages:

        a.)     Decedent Plaintiff 's pain and suffering between the time of the Defendants' negligence and time of the Decedent Plaintiff 's death;

        b.)     Decedent Plaintiff 's total estimated future earning power, less his estimate cost of personal maintenance;

        c.)     Decedent Plaintiff 's loss of retirement and Social Security income;

24

        d.)     Decedent Plaintiff 's other financial losses suffered as a result of his death;

        e.)     Decedent Plaintiff 's loss of the enjoyment of life.

WHEREFORE, the Plaintiffs, JOHN D. KINDLER and SANDRA ALUISE, demand judgment against the Defendants for compensatory and punitive damages, together with court costs, attorneys' fees, interest, and all other relief permitted by the Court. JURY TRIAL DEMANDED.

## COUNT V – PLAINTIFFS v. DEFENDANT ALLEGHENY COUNTY

70.     The Plaintiffs incorporate by reference thereto Paragraph Nos. 1 through 69 of the within Complaint the same as though set forth herein and at length.

71.     Pursuant to 42 Pa. C.S.A. §8548, Defendant ALLEGHENY COUNTY is the indemnitor of its employees, the individual corrections officers, for the payment of any judgment for damages resulting from a judicial determination that an act of either or any of individual corrections officers was the cause and their actions were within the scope of their duties as corrections officers.

72.     Plaintiffs are therefore entitled to recover payment from the Defendant ALLEGHENY COUNTY for any judgment against the individual Defendant corrections officers arising from the prior counts of this Complaint.

25

## VERIFICATION

I,   John Kindler  , have read the foregoing   Complaint  . The statements of fact contained therein are true and correct to the best of my personal knowledge, information and belief.

This statement and verification is made subject to the penalties of 18 PA. C.S. Section 4904 relating to unsworn falsification to authorities which provides that if I make knowingly false averments, I may be subject to criminal penalties.

Date:   May 14, 2009

## VERIFICATION


I, ___Sandra Aluise___ , have read the foregoing ___Complaint___ . The
statements of fact contained therein are true and correct to the best of my personal
knowledge, information and belief.


This statement and verification is made subject to the penalties of 18 PA. C.S.
Section 4904 relating to unsworn falsification to authorities which provides that if I make
knowingly false averments, I may be subject to criminal penalties.


Date: ___May 14, 2009___

WHEREFORE, the Plaintiffs, JOHN D. KINDLER and SANDRA ALUISE, demand judgment against the Defendants for compensatory and punitive damages, together with court costs, attorneys' fees, interest, and all other relief permitted by the Court. JURY TRIAL DEMANDED.

## JURY DEMAND

PLAINTIFFS REQUEST THAT ALL ISSUES THAT MAY BE DETERMINED BY A JURY BE TRIED BY A JURY.

Respectfully submitted,

GOODRICH & GOODRICH, P.C.

BY: _____

William F. Goodrich, Esquire
PA I.D.# 30235

Steven M. Barth, Esquire
Pa. I.D. #89395
GOODRICH & GOODRICH, P.C.
Suite 900 - Law & Finance Building
429 Fourth Avenue
Pittsburgh, PA 15219
(412) 281-1455

steve@goodlazlaw.com

Attorneys for the Plaintiffs